# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH SEKERKE,<br>Inmate Booking No. 10777240,<br><br>                                Plaintiff,<br><br>vs.<br><br>JASON SILVA, Doctor,<br><br>                              Defendants. | Civil No.   09cv0360 JAH (JMA)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED.R.CIV.P. 56(c)**<br><br>**[Doc. No. 60]** |

## I.

### STATEMENT OF THE CASE

Keith Sekerke, ("Plaintiff"), a state prisoner currently at housed at the George Bailey Detention Facility located in San Diego, California, is proceeding pro se and *in forma pauperis* with a Complaint filed pursuant to the Civil Rights Act, 42 U.S.C. § 1983.[1] Currently pending before the Court is Defendant Silva's Motion for Summary Judgment pursuant to FED.R.CIV.P. 56 [Doc. No. 60].

/ / /

---

[1] While this case was randomly referred upon filing to the Honorable Jan M. Adler, United States Magistrate Judge, for disposition pursuant to 28 U.S.C. § 636(b)(1)(B), the Court has determined that a Report and Recommendation regarding the disposition of Defendant's Motion is unnecessary. *See* S. D. CAL. CIVLR 72.3(a).

## II.

## PROCEDURAL BACKGROUND

Defendant Silva moves for summary judgment on the ground that there are no genuine issues of material facts to show that he violated Plaintiff's Eighth Amendment right to adequate medical care. On September 22, 2010, the Court advised Plaintiff of his rights and obligations to oppose Defendant's Motion pursuant to *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988) and *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc).[2] On October 26, 2010, the Court issued an Order vacating the hearing date and informing the parties that the matter would be taken under submission. Noting that Plaintiff had recently filed a notice of change of address, the Court provided Plaintiff with additional time to file an Opposition. *See* Oct. 26, 2010 Order at 1-2. On October 27, 2010, Plaintiff filed his first Opposition. However, Plaintiff later submitted a second Opposition which the Court permitted Plaintiff to file due to the fact that the Court's October 26, 2010 Order was received by Plaintiff after he had submitted his first Opposition. Defendant Silva filed a Reply on November 15, 2010.

Having now exercised its discretion to consider the matter as submitted on the papers without oral argument pursuant to S.D. CAL. CIVLR 7.1.d.1, the Court hereby **GRANTS** Defendant's Motion for Summary Judgment pursuant to FED.R.CIV.P. 56 for the reasons set forth in detail below.

/ / /

/ / /

---

[2] *Klingele* and *Rand* together require the district court "'as a bare minimum, [to provide a pro se prisoner] with fair notice of the requirements of the summary judgment rule.'" *Klingele*, 849 F.2d at 411 (quoting *Hudson v. Hardy*, 412 F.2d 1091, 1094 (D.C. Cir. 1968)). "It would not be realistic to impute to a prison inmate ... an instinctual awareness that the purpose of a motion for summary judgment is to head off a full-scale trial by conducting a trial in miniature, on affidavits, so that not submitting counter affidavits is the equivalent of not presenting any evidence at trial." *Jacobsen v. Filler*, 790 F.2d 1362, 1364 n.4 (9th Cir. 1986) (internal quotation omitted). Actual knowledge or any level of legal sophistication does not obviate the need for judicial explanation. *Klingele*, 849 F.2d at 411-12. Thus, the district court is required to "tell the prisoner about his 'right to file counter-affidavits or other responsive materials and [to][ alert[] [him] to the fact that his failure to so respond might result in the entry of summary judgment against him.'" *Jacobsen*, 790 F.2d at 1365 n.8 (quoting *Klingele*, 849 F.2d at 411).

## III.

### PLAINTIFF'S FACTUAL ALLEGATIONS

Plaintiff was formerly incarcerated at the Richard J. Donovan Correctional Facility ("RJD"). (*See* Compl. at 1.) Plaintiff alleges that he had brain surgery on April 16, 2008. (*Id.* at 3.) Plaintiff was released from the hospital and returned to RJD on May 19, 2008. (*Id.*) Approximately one week later, a nurse examined Plaintiff and found that an "abscess formed that needed to be treated" in the location where Plaintiff's surgery had been performed. (*Id.*) Plaintiff alleges that Dr. Jason Silva "refused to let [Plaintiff] be brought to the infirmary to be treated." (*Id.*) Four days later, Plaintiff claims that the abscess had ruptured requiring Plaintiff to be transported to the hospital by ambulance. (*Id.*) Plaintiff was hospitalized for several days and had seizures following this incident. (*Id.*)

## IV.

### DEFENDANT SILVA'S FACTUAL ALLEGATIONS

On March 31, 2008, Plaintiff was hospitalized at Alvarado Hospital, while in state custody, where he "underwent decompression of a posterior fossa arachnoid cyst and a posterior fossa cyst-to-peritoneum shunt." (Def's Ex. E, Discharge Summary dated 4/3/2008) Approximately two weeks later Plaintiff was transferred to UCSD Medical Center where the shunt was removed on April 21, 2008. (*Id.*) Plaintiff was discharged on April 23, 2008 and returned to RJD. (*Id.*) On or about May 23, 2008, Plaintiff received an MRI. (Def.'s Ex. D, Physician Progress Notes dated May 27, 2008).

Two days later, following complaints of head pain, Plaintiff was taken to the "Triage Treatment Area ("TTA") where he was examined by Senior Registered Nurse Hiles.[3] (*See* Def.'s Ex. A, Declaration of Dr. Jason Silva at ¶ 3.) Nurse Hiles arranged for Plaintiff to be seen by Dr. Silva two days later. (*Id.*) On May 27, 2008, Plaintiff was first examined by Registered Nurse Carrillo[4] who determined that the incision on Plaintiff's head following surgery was

---

[3] Nurse Hiles is not a Defendant in this matter.

[4] Nurse Carrillo is not a Defendant in this matter.

healing and there were no signs of drainage or discharge. (*Id.* at ¶ 6) Plaintiff was then examined by Dr. Silva. (*Id.* at ¶ 7) Plaintiff informed Dr. Silva that he had an infection when he was discharged from Alvarado but Dr. Silva could not confirm this in Plaintiff's records. (*Id.* ¶¶ 4-5.) Moreover, while Plaintiff informed Dr. Silva that he had headaches in the days prior, he did not have a headache at the time of the examination with Dr. Silva. (*Id.*) Plaintiff requested a prescription of Tylenol #3. (*Id.*) Dr. Silva examined Plaintiff and found that he was "neurologically intact, his vitals were stable, he was not experiencing any symptoms of encephalitis or meningitis, and there were no signs of infection around the surgical site." (*Id.* ¶ 8.) Defendant Silva then discussed Plaintiff's case with Dr. Ivy Choo, the Chief Medical Officer at RJD.[5] Together Dr. Silva and Dr. Choo determined that Imitrex, a medication typically used for migraines, was the best course of treatment for Plaintiff. (*Id.* ¶ 9.) They were concerned with prescribing Tylenol #3, a narcotic, "due to the risk of dependency and addition." (*Id.*) Plaintiff disagreed with this prescription, became argumentative and "was escorted by a correctional officer to his housing unit in a stable condition." (*Id.* at ¶ 10.) Dr. Silva then reviewed Plaintiff's Discharge Summary from Alvarado Hospital and determined that Imitrex was the best course of treatment. (*Id.* ¶ 12.)

Later that same day, Plaintiff was doing "sit-ups or push-ups in his cell, which put pressure on the back of his head and caused him pain." (Defs.' Ex. R, Pl.'s Deposition at 75:14-21; Ex. L, Declaration of T. Wichman at ¶ 4.) Registered Nurse Wichman[6] came to Plaintiff's cell and found that Plaintiff's vitals were stable, there were no neurological deficits, plaintiff's skin was cool and dry, and he was not experiencing nausea or vomiting." (Wichman Dec. at ¶ 4.) Nurse Wichman called Dr. Silva to report Plaintiff's complaints. (*Id.* at ¶ 7.) Based on Nurse Wichman's assessment and report, Dr. Silva "treated plaintiff's condition by giving orders to RN Wichman for plaintiff to continue receiving Imitrex (Sumatriptan) and for plaintiff to follow-up with the yard physician." (*Id.*) Plaintiff did not agree with this course of treatment.

---

[5] Dr. Choo is not a Defendant in this matter.

[6] Nurse Wichman is not a Defendant in this matter.

1  (*Id.* at ¶ 8.)  Nurse Wichman informed Dr. Silva that Plaintiff still wanted to see him but Dr.
2  Silva did not examine Plaintiff "given that plaintiff's condition had improved." (*Id.*)

3  Later that day, Nurse Sheriff[7] was called to Plaintiff's housing unit due to a "possible
4  seizure being experienced by plaintiff." (Def.'s Ex. I, Interdisciplinary Progress Notes dated
5  May 27, 2008.)    Plaintiff was administered Ammonia . (*Id.*)  Nurse Sheriff called Dr. Silva
6  and informed him of the possible seizure.  (Silva Decl. at ¶ 16.)  Nurse Sheriff also informed Dr.
7  Silva that "she did not observe any seizure activity, plaintiff was fully alert and oriented,
8  plaintiff's vital signs were normal, there were no neurological deficits or postictal signs, and
9  plaintiff was only complaining of having a headache." (*Id.*)  Based on that information, Dr.
10 Silva "formed the opinion that plaintiff did not have a seizure and did not require further medical
11 treatment." (*Id.*)  Dr. Silva directed Plaintiff to be returned to his cell but in addition, Dr. Silva
12 instructed Nurse Sheriff to give Plaintiff Ibuprofen.  (*Id.*)

13 On May 31, 2008, Plaintiff was again admitted to Alvarado Hospital for a "possible
14 infection concerning his surgical site." (Def.'s Ex. K, Alvarado Emergency Department
15 Admission Report dated May 31, 2008..)  However, it was later determined that Plaintiff's would
16 had "opened spontaneously" and Plaintiff needed oral antibiotics. (*Id.*, Transfer Summary dated
17 May 31, 2008.).  Plaintiff was returned to RJD on June 2, 2008.  (*Id.* at 9.)

## V.

### **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**A.  Standard of Review**

21 Summary judgment is properly granted when "there is no genuine issue as to any material
22 fact and ... the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c).
23 Entry of summary judgment is appropriate "against a party who fails to make a showing
24 sufficient to establish the existence of an element essential to that party's case, and on which that
25 party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
26 The court shall consider all admissible affidavits and supplemental documents submitted on a

---

[7] Nurse Sheriff is not a Defendant in this matter.

motion for summary judgment. *See Connick v. Teachers Ins. & Annuity Ass'n*, 784 F.2d 1018, 1020 (9th Cir. 1986).

The moving party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970). However, to avoid summary judgment, the nonmovant cannot rest solely on conclusory allegations. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Rather, he must present "specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The Court may not weigh evidence or make credibility determinations on a motion for summary judgment. Quite the opposite, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Id.* at 255; *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The nonmovant's evidence need only be such that a "fair minded jury could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 255. However, in determining whether the nonmovant has met his burden, the Court must consider the evidentiary burden imposed upon him by the applicable substantive law. *Id.*

A verified complaint or motion may be used as an opposing affidavit under FED.R.CIV.P. 56 to the extent it is based on personal knowledge and sets forth specific facts admissible in evidence. *McElyea v. Babbitt*, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curiam) (complaint); *Johnson v. Meltzer*, 134 F.3d 1393, 1399-1400 (9th Cir. 1998) (motion). To "verify" a complaint, the plaintiff must swear or affirm that the facts in the complaint are true "under the pains and penalties of perjury." *Schroeder v. McDonald*, 55 F.3d 454, 460 n.10 (9th Cir. 1995).

**1.    42 U.S.C. § 1983**

Section 1983 authorizes a "suit in equity, or other proper proceeding for redress" against any person who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution." *Nelson v. Campbell*, 541 U.S. 637, 124 S.Ct. 2117, 2122 (2004).

**2.    Plaintiff's Eighth Amendment Medical Care Claims**

The Eighth Amendment prohibits punishment that involves the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (quoting *Gregg v. Georgia*, 428

U.S. 153, 173 (1976)); *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). The Eighth Amendment's cruel and unusual punishments clause is violated when prison officials are deliberately indifferent to a prisoner's serious medical needs. *Estelle*, 429 U.S. at 105. "Medical" needs include a prisoner's "physical, dental, and mental health." *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982); *Hunt v. Dental Dept.*, 865 F.2d 198, 200 (9th Cir. 1989).

To show "cruel and unusual" punishment under the Eighth Amendment, the prisoner must point to evidence in the record from which a trier of fact might reasonably conclude that Defendants' medical treatment placed Plaintiff at risk of "objectively, sufficiently serious" harm and that Defendants had a "sufficiently culpable state of mind" when they either provided or denied him medical care. *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995) (internal quotations omitted). Thus, there is both an objective and a subjective component to an actionable Eighth Amendment violation. *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002); *Toguchi*, 391 F.3d at 1057 ("To establish an Eighth Amendment violation, a prisoner 'must satisfy both the objective and subjective components of a two-part test.'") (quoting *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002)).

Although the "routine discomfort inherent in the prison setting" is inadequate to satisfy the objective prong of an Eighth Amendment inquiry, *see Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 1999), the objective component is generally satisfied so long as the prisoner alleges facts to show that his medical need is sufficiently "serious" such that the "failure to treat [that] condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Clement*, 298 F.3d at 904 (quotations omitted); *Lopez*, 203 F.3d at 1131-32; *see also Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994) ("serious" medical conditions are those a reasonable doctor would think worthy of comment, those which significantly affect the prisoner's daily activities, and those which are chronic and accompanied by substantial pain).

However, the subjective component requires the prisoner to also allege facts which show that the officials had the culpable mental state, which is "'deliberate indifference' to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). "Deliberate indifference" is evidenced only when "the

official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Toguchi*, 391 F.3d at 1057.

Inadequate treatment due to "mere medical malpractice" or even gross negligence, does not amount to a constitutional violation. *Estelle*, 429 U.S. at 106; *Hallett*, 296 F.3d at 744; *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). In other words, an "official's failure to alleviate a significant risk that he should have perceived but did not, ... cannot ... be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838; *Toguchi*, 391 F.3d at 1057 ("If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.") (brackets, footnote and citations omitted)). The Eighth Amendment proscribes only "the 'unnecessary and wanton infliction of pain,' [] includ[ing] those sanctions that are 'so totally without penological justification that it results in the gratuitous infliction of suffering.'" *Hoptowit*, 682 F.2d at 1246 (quoting *Gregg*, 428 U.S. at 173, 183). "This is not an easy test for [a] plaintiff[] to satisfy." *Hallett*, 296 F.3d at 745.

Moreover, a difference of opinion between medical professionals concerning the appropriate course of inmate treatment or care is not enough, by itself, to support a claim of deliberate indifference. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Nor does a difference of opinion between the prisoner and his doctors constitute deliberate indifference. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). And, while deliberate indifference can be manifested if a doctor or prison guard intentionally denies or delays access to medical care or otherwise interferes with medical treatment already prescribed, *see Estelle*, 429 U.S. at 104-05, the delay must also lead to further injury or be somehow harmful. *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992) (noting that harm caused by delay need not necessarily be "substantial"), *overruled on other grounds, WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997); *Wood*, 900 F.2d at 1339-40; *see also Shapely v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985); *Hunt*, 865 F.2d at 200 ("[D]elay in providing a

prisoner with dental treatment, standing alone, does not constitute an Eighth Amendment violation.").

First, Defendant Silva argues that Plaintiff has failed to meet the objective component of an Eighth Amendment inadequate medical care claim in that, Plaintiff did not have a serious medical need. Plaintiff's Complaint alleges that he had an "abscess" that formed "at my surgical site" which Dr. Silva refused to treat. (Compl. at 3.) As a result, the abscess "ruptured" which caused him to have a seizure, as well as resulting in a staph infection. (*Id.*)

Defendant Silva contends that Plaintiff did not have a serious medical need at any of the times he was examined by Dr. Silva or any of the times that prison staff reported to Dr. Silva regarding Plaintiff's medical condition. (*See* Def.'s Mot. at 11.) The medical reports provided by Defendants, and which are also attached to Plaintiff's Opposition, indicate that Plaintiff had "some drainage from the wound that opened spontaneously" when he was examined at Alvarado Hospital on May 31, 2008. (*See* Def's Ex. K; *see also* Pl.'s Opposition dated Oct. 27, 2010, Ex. A.) The only treatment offered with regard to Plaintiff's medical condition was the administering of oral antibiotics. Plaintiff claims that he had "developed a deadly infection" (M.R.S.A.) in which [he] almost died from." (Pl.'s Opp'n at 4.) Again, while Plaintiff makes such a claim, there is no admissible documentation in the record to support that allegation. Plaintiff provides no evidence to rebut Defendant's evidence, which Plaintiff himself relies upon, that indicates he did not have a serious medical need. Plaintiff's only allegations are conclusory which are insufficient to defeat Defendant's motion for summary judgment. *See Berg*, 794 F.2d at 459.

Accordingly, the Court finds that the evidence before the Court fails to show any triable issue as to the objective component of an Eighth Amendment inadequate medical care claim. *See Frost*, 152 F.3d at 1128; *Farmer*, 511 U.S. at 837.

Even if Plaintiff were able to provide evidence of a serious medical need, in viewing the evidence presented in the light most favorable to Plaintiff, the Court finds that no genuine issue of material fact exists as to whether Defendant Silva was deliberately indifferent to Plaintiff's serious medical needs.

Defendant and Plaintiff submit many of the same medical records in support of their arguments. The record before the Court, which is undisputed, shows that Dr. Silva examined Plaintiff on May 28, 2008. (*See* Def's. Ex. D, Interdisciplinary Progress Notes dated May 28, 2008.) In this examination, based on his medical opinion, Defendant Silva prescribed Imitrex. (Silva Decl. ¶¶ 8-9.)

Plaintiff claims in his Opposition that "Dr. Silva was notified by a nurse (R.N. Wichman) that I appeared to have an abscess of my brain surgery site." (Pl.'s Opp'n dated Oct. 27, 2010 at 2-3.) Neither Plaintiff's Complaint nor his Oppositions are verified under penalty of perjury. However, Nurse Wichman has provided a declaration in support of Defendant's Motion in which she states that when she examined Plaintiff her "assessment was that plaintiff was experiencing pain and anxiety on his subjective complaints." (Wichman Decl. at ¶¶ 5-6.) There is no documentation provided by either Defendant or Plaintiff that would support Plaintiff's unsubstantiated claim that Nurse Wichman saw an "abscess." In fact in her declaration, Nurse Wichman states "I did not see any objective signs of any serious medical condition." (*Id.* at ¶ 5.)

Plaintiff also maintains that Defendant has fabricated the reports submitted in support of the Motion and further claims that he was "kicked out" of the medical clinic because he disagreed with the medication recommended by Dr. Silva. (*See* Pl.'s Opp'n at 3, dated Oct. 27, 2010.) Plaintiff then goes on to claim that he was never prescribed Imitrex. (*Id.* at 4.) However, like all of Plaintiff's other claims, this claim is not substantiated in any way aside from a conclusory allegation. He refers to a disagreement over medication but fails to elaborate whether he disagreed with the medication offered by Dr. Silva or whether Dr. Silva refused to prescribe any medication. (*Id.*)

The only evidence before this Court and the only allegations in Plaintiff's unverified Complaint indicate that Defendant Silva provided Plaintiff with the necessary medical treatment for his medical needs. Thus, based upon the record, the Court finds that Defendant Silva has properly supported his contention that no genuine issue of material fact exists with respect to

whether Defendant Silva was "deliberately indifferent" to Plaintiff's serious medical needs in violation of the Eighth Amendment.

### VI.
### CONCLUSION AND ORDER

For all the reasons set forth in the Order the Court hereby: **GRANTS** Defendant's Motion for Summary Judgment pursuant to FED.R.CIV.P. 56 [Doc. No. 60]. The Clerk of Court is directed to enter judgment for Defendant and close the file.

**IT IS SO ORDERED.**

DATED: November 24, 2010

_____
JOHN A. HOUSTON
United States District Judge